IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QUEST INTEGRITY USA, LLC, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civ. No. 14-1482-SLR |
| CLEAN HARBORS INDUSTRIAL SERVICES, INC., | ) ) ) ) | |
| Defendant. | ) ) | |
| QUEST INTEGRITY USA, LLC, | ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civ. No. 14-1483-SLR |
| COKEBUSTERS USA INC., | ) ) ) | |
| Defendant. | ) | |

Thomas C. Grimm, Esquire and Jeremy A. Tigan, Esquire of Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: Douglas A. Grady, Esquire, John R. Nelson, Esquire, Richard T. Black, Esquire, Emily R. Kelly, Esquire, and Benjamin Hodges, Esquire of Foster Pepper, PLLC.

Kelly E. Farnan, Esquire and Selena E. Molina, Esquire of Richards, Layton & Finger, P.A., Wilmington, Delaware. Counsel for Defendant Clean Harbors Industrial Services, Inc. Of Counsel: Michael J. Turgeon, Esquire and Robert S. Rigg, Esquire of Vedder Price, PC.

Richard L. Horwitz, Esquire, David E. Moore, Esquire, and Bindu A. Palapura, Esquire of Potter Anderson & Corroon LLP, Wilmington, Delaware. Counsel for Defendant Cokebusters USA Inc. Of Counsel: Thomas M. Fulkerson, Esquire, Wesley G. Lotz, Esquire, and Gavin Uttecht, Esquire of Fulkerson Lotz LLP, and Michael Hudgins, Esquire and Steven Hudgins, Esquire of The Hudgins Law Firm.

# MEMORANDUM OPINION

Dated: July 8, 2015
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiff Quest ("plaintiff") initiated two lawsuits on December 15, 2014, by filing complaints against Cokebusters USA Inc.[1] ("Cokebusters") and Clean Harbors Industrial Services, Inc.[2] ("Clean Harbors") (collectively, "defendants") individually,[3] asserting infringement of U.S. Patent No. 7,542,874 ("the '874 patent"), entitled "2D and 3D Display System and Method for Furnace Tube Inspection." (D.I. 1, ex. A) Plaintiff's motions for preliminary injunctions against defendants were denied. (D.I. 116)

Presently before the court is a motion to transfer venue to the Southern District of Texas filed by defendant Cokebusters. (D.I. 25) Defendant Clean Harbors joined that motion. (Civ. No. 14-1482, D.I. 25) The court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a). Venue is proper in the District of Delaware pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1400(b).

## II. BACKGROUND

Plaintiff is a limited liability company organized and existing under the laws of the State of Texas and having its principal place of business in Seattle, Washington. (D.I. 34 at 3) Defendant Clean Harbors is a corporation organized and existing under the laws of the State of Delaware and having its principal place of business in Norwell, Massachusetts. Defendant Cokebusters is a corporation organized and existing under

---

[1] Civ. No. 14-1483. The court refers to the filings in this action unless otherwise specified.

[2] Civ. No. 14-1482.

[3] Plaintiff also filed a complaint against A.Hak Industrial Services US LLC, Civ. No. 14-1481, but that suit has since been voluntarily dismissed. Plaintiff then filed a separate action against A.Hak in the Western District of Washington. (D.I. 34 at 4)

the laws of the State of Delaware and having its principal place of business in Houston, Texas. (D.I. 26 at 3)

## III. STANDARD OF REVIEW

Section 1404(a) of Title 28 of the United States Code grants district courts the authority to transfer venue "[f]or the convenience of parties and witnesses, in the interests of justice . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Much has been written about the legal standard for motions to transfer under 28 U.S.C. § 1404(a). See, e.g., In re Link-A-Media Devices Corp., 662 F.3d 1221 (Fed. Cir. 2011); Jumara v. State Farm Ins. Co., 55 F.3d 873 (3d Cir. 1995); Helicos Biosciences Corp. v. Illumina, Inc., 858 F.Supp.2d 367 (D. Del. 2012).

Referring specifically to the analytical framework described in Helicos, the court starts with the premise that a defendant's state of incorporation has always been "a predictable, legitimate venue for bringing suit" and that "a plaintiff, as the injured party, generally ha[s] been 'accorded [the] privilege of bringing an action where he chooses.'" 858 F.Supp.2d at 371 (quoting Norwood v. Kirkpatrick, 349 U.S. 29, 31 (1955)). Indeed, the Third Circuit in Jumara reminds the reader that "[t]he burden of establishing the need for transfer . . . rests with the movant" and that, "in ruling on defendants' motion, the plaintiff's choice of venue should not be lightly disturbed." 55 F.3d at 879 (citation omitted).

The Third Circuit goes on to recognize that,

> [i]n ruling on § 1404(a) motions, courts have not limited their consideration to the three enumerated factors in § 1404(a) (convenience of parties, convenience of witnesses, or interests of justice), and, indeed, commentators have called on the courts to "consider all relevant factors to determine whether on balance the litigation would more conveniently

2

proceed and the interests of justice be better served by transfer to a different forum."

*Id.* (citation omitted). The court then describes some of the "many variants of the private and public interests protected by the language of § 1404(a)." *Id.*

> The private interests have included: plaintiff's forum of preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—**but only to the extent that the witnesses may actually be unavailable for trial in one of the fora**; and the location of books and records **(similarly limited to the extent that the files could not be produced in the alternative forum)**.
>
> The public interests have included: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* (citations omitted) (emphasis added).

## IV. ANALYSIS

With the above "jurisdictional guideposts" in mind, the court turns to the "difficult issue of federal comity" that transfer motions present. *E.E.O.C. v. Univ. of Pa.*, 850 F.2d at 976. Plaintiff has not challenged defendants' assertion that venue would also be proper in the Southern District of Texas; therefore, the court will not address this further. *See* 28 U.S.C. § 1404(a); (D.I. 34)

The parties have all chosen legitimate forums in which to pursue the instant litigation. Both defendants are Delaware corporations. A party's state of incorporation is a traditional and legitimate venue, as is the locus of a party's business activities. Defendants argue that the court should give less deference to plaintiff's choice of forum because Delaware is not "home turf" for either party (D.I. 26 at 3-7) and that litigation in

3

Texas would be more appropriate because their office, headquarters, operations, facilities, and employees are based in the Southern District of Texas, their principal place of business is Houston, and all relevant documents are in Houston and/or the United Kingdom. (D.I. 26 at 7-8) Indeed, the basis of their preference for the Southern District of Texas is that "Houston is the most convenient and cost-effective locale for hearings or trial." (D.I. 26 at 8) However, given that "convenience" is separately considered in the transfer analysis, the court declines to elevate defendants' choice of venue over the choice of the plaintiff. That plaintiffs have historically been accorded the privilege of choosing their preferred venue for pursuing their claims remains a significant factor.

A claim for patent infringement arises wherever someone has committed acts of infringement, to wit, "makes, uses, offers to sell, or sells any patented invention" without authority. *See generally* 35 U.S.C. § 271(a); *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360 (Fed. Cir. 1998) (an infringement claim "arises out of instances of making, using, or selling the patented invention"). Plaintiff alleges infringing activity by defendants in multiple states, including Washington, California, Louisiana, Delaware, and Michigan. Defendants argue that because plaintiff's complaint does not specify a particular locale of alleged infringement, the best measure is where customers are located and where jobs are conducted. (D.I. 26 at 11) The court disagrees. Defendants admit to engaging in infringing conduct in Delaware. (D.I. 34 at 13) That fact negates the argument that the alleged infringement is focused in the Texas Gulf Coast region.

The Third Circuit in *Jumara* indicated that, in evaluating the convenience of the parties, a district court should focus on the parties' relative physical and financial condition. In this case, defendant Cokebusters alleges that it is a "fraction of the size of Quest." (D.I. 26 at 8) On the other hand, plaintiff contends that defendant Clean Harbors is part of a $3.5 billion revenue company. (D.I. 34 at 10) Defendant Cokebusters further asserts that "requiring management to travel 1500 miles away from its headquarters and base of operations for hearings or trial would severely disrupt operations and drain its assets." (D.I. 26 at 8)

With respect to the convenience of the witnesses, it is not whether witnesses are inconvenienced by litigation but, rather, whether witnesses "actually may be unavailable for trial in one of the fora" that is the relevant consideration in this analysis. *Jumara*, 55 F.3d at 879. Defendants argue that more than a dozen refining companies are located in Texas and that Houston is within driving distance for any potential non-party witnesses who live in Texas or Louisiana. (D.I. 26 at 9) They further contend that most refineries and a number of their customers in this country are in Texas or in the Gulf Coast region, claiming that refinery customers are key fact witnesses and that this case should be decided in Texas, where the affected customers can be heard.[4] (D.I. 26 at 8-11) As for the "handful of witnesses in the UK," defendant Cokebusters argues that it would be more convenient for them to travel to Texas, where they could combine their trip with business at the Houston headquarters. (D.I. 41 at 2) Finally, defendants assert generally that there are potential witnesses who "are unlikely to travel to Delaware

---

[4] If the record presented in the preliminary injunction proceedings is any indication of what a trial record will look like, the evidence will consist of reports of various inspections, where defendants' employees are the authors, not the customers.

5

voluntarily." (D.I. 26 at 12) See Smart Audio Techs., L.L.C. v. Apple, Inc., 910 F.Supp.2d 718, 732 (D. Del. 2012) ("[T]his factor is only given weight when there is some reason to believe that a witness actually will refuse to testify absent a subpoena.") Although it is possible that the Southern District of Texas is a more convenient forum than Delaware for some witnesses, defendants have not indicated that any particular witness who may be called upon to testify at trial would be unwilling to do so.[5]

The Third Circuit in Jumara advised that the location of books and records is only determinative if "the files c[an] not be produced in the alternative forum." Jumara, 55 F.3d at 879. Defendants assert that documents relevant to its business, operations, marketing, financials, and customer service are accessible and managed in Texas. (D.I. 26 at 9) However, consistent with the realities of modern technology, this court's view is that virtually all businesses maintain their books and records in electronic format readily available for review and use at any location. Indeed, there is nothing in the record that indicates that the parties have experienced any difficulty conducting discovery thus far, which has required a significant amount of transmission of documents from both parties. With respect to trial, defendants fail to show how these documents are incapable of being presented at trial in Delaware.

The court recognizes that trial in Texas may be easier and less expensive for defendants, where their operations are located. Trial in Texas would not be burdensome for plaintiff, since it also maintains offices and conducts business in Texas

---

[5] With respect to trials, in the nine patent jury trials this judicial officer conducted between March 2010 and October 2011, an average of three fact witnesses per party appeared live for trial, with the average length of trial being 28 hours (with the parties often using less time than allocated, on average, 25 hours). Further, depositions in the cases over which this judicial officer presides are generally taken where the deponents reside or work. There is no suggestion that this case will be an exception.

6

despite having its principal place of business in Washington. (D.I. 34 at 12; D.I. 26 at 3-4) Nonetheless, because less than 10% of cases are resolved through trial, and because trials in most busy districts are of limited duration, this factor should not be accorded significant weight. It certainly should not become the tail that wags the dog.

With respect to administrative difficulty,[6] trial in this case will be scheduled consistent with the parties' proposals. Local interest in deciding local controversies is not a dispositive factor, as patent litigation does not constitute a local controversy in most cases. Indeed, patent litigation implicates constitutionally protected property rights, is governed by federal law reviewed by a court of appeals of national (as opposed to regional) stature, and affects national (if not global) markets. *See Cradle IP v. Texas Instruments, Inc.*, 923 F.Supp.2d 696, 700-01 (D. Del. 2013).

The remaining *Jumara* public interest factors—the enforceability of a judgment, the public policies of the fora, and the familiarity of the judge with state law—carry little weight in this transfer analysis, as they are mostly neutral or largely irrelevant to patent cases. The parties agree on this point. (D.I. 26 at 13; D.I. 34 at 14)

## V. CONCLUSION

In sum, defendants have the burden of persuading the court that transfer is appropriate, not only for its convenience but in the interests of justice. In this case, plaintiff chose a legitimate forum which both defendants have in common—their state of

---

[6] Regarding the issue of convenience, defendants rely, in part, on efficiency that would result from consolidating plaintiff's cases against defendants with plaintiff's case against A.Hak in the Southern District of Texas, contending that all defendants would prefer to litigate in the Southern District of Texas. (D.I. 26 at 11) Notably, however, plaintiff alleges that A.Hak has not moved to transfer from the Western District of Washington and has not agreed to keep the same schedule even if transfer should occur. (D.I. 34 at 13) Both points negate defendants' argument that consolidation in Texas would be more efficient.

7

incorporation. As is usual in these cases, the convenience factors do not weigh in favor of transfer because discovery is a local event and trial is a limited event.[7] Although Delaware is not the locus of any party's business activities, it is a neutral forum. The court is not persuaded that transfer is warranted in the interests of justice. For the foregoing reasons, defendants' motion to transfer venue (D.I. 25) is denied. An order shall issue.

---

[7] As noted, discovery will take place electronically or where the deponents reside or work. Moreover, most trials now are scheduled for less than seven days, and involve only a handful of live witnesses and a limited number of documents.

8