IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| QUEST INTEGRITY USA, LLC, | ) |  |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Civ. No. 14-1482-SLR |
| CLEAN HARBORS INDUSTRIAL SERVICES, INC., | ) | |
| Defendant. | ) | |

| QUEST INTEGRITY USA, LLC, | ) |  |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Civ. No. 14-1483-SLR |
| COKEBUSTERS USA INC., | ) | |
| Defendant. | ) | |

Thomas C. Grimm, Esquire and Jeremy A. Tigan, Esquire of Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: Douglas A. Grady, Esquire, John R. Nelson, Esquire, Richard T. Black, Esquire, Emily R. Kelly, Esquire, and Benjamin Hodges, Esquire of Foster Pepper, PLLC.

Kelly E. Farnan, Esquire and Selena E. Molina, Esquire of Richards, Layton & Finger, P.A., Wilmington, Delaware. Counsel for Defendant Clean Harbors Industrial Services, Inc. Of Counsel: Michael J. Turgeon, Esquire and Robert S. Rigg, Esquire of Vedder Price, PC.

Richard L. Horwitz, Esquire, David E. Moore, Esquire, and Bindu A. Palapura, Esquire of Potter Anderson & Corroon LLP, Wilmington, Delaware. Counsel for Defendant Cokebusters USA Inc. Of Counsel: Thomas M. Fulkerson, Esquire, and Wesley G. Lotz, Esquire of Fulkerson Lotz LLP, and Michael Hudgins, Esquire and Steven Hudgins, Esquire of The Hudgins Law Firm.

**MEMORANDUM OPINION**

Dated: July 22, 2015
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiff Quest Integrity USA, LLC ("Quest") initiated two lawsuits on December 15, 2014, by filing complaints against Cokebusters USA Inc.[1] ("Cokebusters") and Clean Harbors Industrial Services, Inc.[2] ("Clean Harbors") (collectively, "defendants") individually,[3] asserting infringement of U.S. Patent No. 7,542,874 ("the '874 patent"), titled "2D and 3D Display System and Method for Furnace Tube Inspection." (D.I. 1, ex. A)

Defendants filed answers and counterclaims on January 30, 2015. (D.I. 32; Civ. No. 14-1482, D.I. 28) Cokebusters asserted a counterclaim and an affirmative defense based on allegations of inequitable conduct. (D.I. 32) Clean Harbors also asserted an inequitable conduct affirmative defense. (Civ. No. 14-1482, D.I. 28) Quest then filed a motion to dismiss and strike defendants' inequitable conduct allegations. (D.I. 43; Civ. No. 14-1482, D.I. 41) In response, Cokebusters filed an amended answer, providing further allegations in support of its inequitable conduct counterclaim and affirmative defense. (D.I. 50) Clean Harbors filed an amended answer as well, pleading inequitable conduct as a counterclaim and providing additional allegations in support of the counterclaim and previously asserted defense of inequitable conduct. (Civ. No. 14-1482, D.I. 45) Quest's motions for preliminary injunctions against defendants, filed concurrently with the complaint, were denied. (D.I. 116) Cokebusters' subsequent

---

[1] Civ. No. 14-1483. The court refers to the filings in this action unless otherwise specified.
[2] Civ. No. 14-1482.
[3] Quest also filed a complaint against A.Hak Industrial Services US LLC, Civ. No. 14-1481, but that suit has since been voluntarily dismissed. Quest then filed a separate action against A.Hak in the Western District of Washington. (D.I. 34 at 4)

motion to transfer venue, which was joined by Clean Harbors, was also denied. (D.I. 117)

Presently before the court is Quest's renewed motion to dismiss the counterclaims and strike the affirmative defenses of inequitable conduct pled by defendants. (D.I. 78) Clean Harbors did not oppose Quest's motion to dismiss and strike. Therefore, the motion is granted with respect to Clean Harbors. This opinion concerns Quest's motion with respect to Cokebusters.

The court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a). Venue is proper in the District of Delaware pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1400(b).

## II. BACKGROUND

Quest is a limited liability company organized and existing under the laws of the State of Texas and having its principal place of business in Seattle, Washington. (D.I. 34 at 3) Cokebusters is a corporation organized and existing under the laws of the State of Delaware and having its principal place of business in Houston, Texas. (D.I. 26 at 3)

## III. STANDARD OF REVIEW

### A. Motion to Dismiss[4]

---

[4] The parties have raised substantive arguments in their pleadings, and Quest provided an exhibit containing a portion of the prosecution history with its motion. (D.I. 79, ex. A) Cokebusters argues that this converts the motion to dismiss to a motion for summary judgment. (D.I. 89 at 15-16) The prosecution history of the '874 patent, which is publicly available through the PTO's database, is a public document that the court may rely upon in deciding this motion to dismiss. *See e.g., Benihana of Tokyo Inc. v. Benihana Inc.*, 2011 WL 3861897, at *2 & n.1 (D. Del. Sept. 1, 2011) (considering, on a motion to dismiss, a document that was submitted to the PTO and publicly available); *Rosenberg v. XM Ventures*, 129 F. Supp. 2d 681, 687 n.6 (D. Del.), *aff'd*, 2274 F.3d 137 (3d Cir. 2001) ("It is well settled that public records can be considered on a motion to

A motion filed under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint's factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 545 (internal quotation marks omitted) (interpreting Fed. R. Civ. P. 8(a)). Consistent with the Supreme Court's rulings in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Third Circuit requires a two-part analysis when reviewing a Rule 12(b)(6) motion. *Edwards v. A.H. Cornell & Son, Inc.*, 610 F.3d 217, 219 (3d Cir. 2010); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, a court should separate the factual and legal elements of a claim, accepting the facts and disregarding the legal conclusions. *Fowler*, 578 F.3d. at 210-11. Second, a court should determine whether the remaining well-pled facts sufficiently show that the plaintiff "has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). As part of the analysis, a court must accept all well-pleaded factual allegations in the complaint as true, and view them in the light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002); *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). In this regard, a court may consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384-85 n.2 (3d Cir. 1994).

---

dismiss.") The court does not rely on the parties' substantive arguments to determine whether the inequitable conduct allegations were sufficiently pled; therefore, the motion at bar remains a motion to dismiss.

The court's determination is not whether the non-moving party "will ultimately prevail" but whether that party is "entitled to offer evidence to support the claims." *United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 302 (3d Cir. 2011). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64.

### B. Motion to Strike

Fed. R. Civ. P. 12(b)(6) does not offer a mechanism for dismissing affirmative defenses because it refers only to "claim[s]." *See Wyeth Holdings Corp. v. Sandoz, Inc.*, 2012 WL 600715, at *4 (D. Del. Feb. 3, 2012). However, Fed. R. Civ. P. 12(f) provides: "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "When ruling on a motion to strike, the [c]ourt must construe all facts in favor of the nonmoving party and deny the motion if the defense is sufficient under the law. Further, a court should not grant a motion to strike a defense unless the insufficiency of the defense is clearly apparent." *Symbol Techs., Inc. v. Aruba Networks, Inc.*, 609 F.Supp.2d 353, 356 (D. Del. 2009) (alteration in original) (citations omitted) (internal quotation marks omitted). "As a general matter, motions to strike under Rule 12(f) are disfavored." *Fesnak & Assocs., LLP v. U.S. Bank Nat'l Ass'n*, 722 F.Supp.2d 496, 502 (D. Del. 2010).

4

## IV. ANALYSIS

### A. Inequitable Conduct

"An individual associated with the filing and prosecution of a patent application commits inequitable conduct when he or she (1) makes an affirmative misrepresentation of a material fact, fails to disclose material information, or submits false material information to the [Patent and Trademark Office ("PTO")]; (2) with the specific intent to deceive the PTO." *XpertUniverse, Inc. v. Cisco Sys., Inc.*, 868 F.Supp.2d 376, 379 (D. Del. 2012) (internal quotation marks omitted). Quest asserts that Cokebusters' inequitable conduct counterclaim and affirmative defense should be dismissed and stricken under Fed. R. Civ. P. 12(b)(6) and 12(f) because they do not meet the minimal requirements for pleading inequitable conduct under Fed. R. Civ. P. 9(b) and Federal Circuit precedent. (D.I. 79 at 8-20)

A claim of patent unenforceability premised upon inequitable conduct is a claim sounding in fraud. Under Fed. R. Civ. P. 9(b), fraud is a clear exception to the otherwise broad notice-pleading standards. A party alleging unenforceability, therefore, must plead with particularity those facts which support the claim that the patent holder acted fraudulently before the PTO. *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009).

"To prevail on a claim of inequitable conduct, the accused infringer must prove that the patentee acted with the specific intent to deceive the PTO." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011). Of course, the standard for proving inequitable conduct is a more rigorous one than the standard for pleading inequitable conduct; apparently, even the Federal Circuit has been tempted to

5

confuse the same. *See e.g., Pressure Prods. Med. Supplies, Inc. v. Greatbatch Ltd.*, 599 F.3d 1308, 1320 (Fed. Cir. 2010) ("[T]his court has issued significant opinions requiring specific and demanding showings of evidence before a party may **assert** the defense of inequitable conduct," citing *Star Scientific*, 537 F.3d at 1365, a case where the district court's final judgment of inequitable conduct was under review) (emphasis added). Accordingly, the proper standard of review is that articulated in *Exergen*, to wit, that "Rule 9(b) requires the identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." 575 F.3d at 1327; *see also Evonik Degussa GmbH v. Materia Inc.*, 2012 WL 4503771, at *6 (D. Del. Oct. 1, 2012) (discussing *Exergen* as the applicable heightened pleading standard for inequitable conduct).

> [M]oreover, although "knowledge" and "intent" may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO.

*Exergen*, 575 F.3d at 1328-29.

Just as a claim for inequitable conduct must meet the heightened pleading requirements of Rule 9(b), a defendant is also "required to plead this affirmative defense with particularity under Rule 9(b)." *See Bayer CropScience AG v. Dow AgroSciences LLC*, 2011 WL 6934557, at *3 (D. Del. Dec. 30, 2011). As a result, Cokebusters' counterclaim and affirmative defense of inequitable conduct rise or fall together. *See XpertUniverse*, 868 F.Supp.2d at 379-83 (assessing the sufficiency of counterclaims and affirmative defenses of inequitable conduct together); *Southco, Inc. v. Penn Eng'g & Mfg. Corp.*, 768 F.Supp.2d 715, 721-24 (D. Del. 2011) (same).

6

Quest's motion to dismiss and strike the inequitable conduct allegations is based on the assertion that Cokebusters has failed to adequately plead inequitable conduct as articulated by the Federal Circuit and required by Fed. R. Civ. P. 9(b). Specifically, Quest maintains that Cokebusters has not sufficiently pled facts to show: (1) but-for materiality, or (2) intent to deceive.[5] (D.I. 101 at 2-4) The court considers each separately, as required by the Federal Circuit. See Therasense, 649 F.3d at 1290 ("A district court should not use a 'sliding scale,' where a weak showing of intent may be found sufficient based on a strong showing of materiality, and vice versa.").

## B. But-For Materiality

For an inequitable conduct allegation in a case involving nondisclosure of information, the accused infringer must prove by clear and convincing evidence that the applicant knew of the information, "knew that it was material, and made a deliberate decision to withhold it." Therasense, 649 F.3d at 1290. "[A]s a general matter, the materiality required to establish inequitable conduct is but-for materiality." Id. at 1291. "When an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art." Id. Further, "[w]here the patentee has engaged in affirmative acts of egregious conduct, such as the filing of an unmistakably false affidavit," materiality is presumed, since "a patentee is unlikely to go to great lengths to deceive the PTO with a falsehood

---

[5] Cokebusters has adequately pled the "who" (Roberts and potentially Carlson, who is Quest's patent agent and counsel); "what" (misrepresentations and omissions of facts relating to, inter alia, the pre-critical date prior art and on-sale activities, including Roberts' own publication regarding critical prior art and the date FTIS graphic software was introduced to the market); "when" (in the 2005 initial filing with the PTO, and in subsequent filings and teleconferences); "where" (in written submissions and teleconferences with the PTO); and "how" (by withholding important pieces of prior art, which led the PTO to believe that no prior art taught the '874's apparatus or methods for serpentine furnace tubes). (D.I. 50 ¶¶ 17-21)

7

unless [he] believes that falsehood will affect the issuance of the patent." *Therasense*, 649 F.3d at 1292 (citing *Hazel-Atlas*, 322 U.S. 238, 245 (1944)).

Cokebusters states that materiality applies broadly to all claims under the '874 patent. To support the elements of but-for materiality, Cokebusters alleges that the '874 invention was not new, was obvious from existing technology, and had been sold before the bar date. (D.I. 89 at 10) These statements, if disclosed, would have been fatal to all claims in the '874 patent. The PTO originally rejected all but a few of the '874 claims as obvious, and only relented after Quest repeatedly advised that the '874 was novel and non-obvious over prior art, providing information that Cokebusters contends is false. (D.I. 89 at 11) In addition, Cokebusters identifies the EPO's later rejection of the same patent request in Europe based on information that was allegedly not disclosed to the PTO, namely: (1) the existing state of the art;[6] and (2) Robert's 2003 paper entitled "Reformer Tube Inspection and Asset Management," which he presented at a conference in Utah and which contained three-dimensional images produced by a LOTIS on-board computer that allowed the operator to identify areas where bulging or flame impingement may be present and provided operators with important information for decision-making. (D.I. 89 at 8, 10)

At the pleading stage, the court does not decide the merits of the claim, only whether materiality has been alleged with sufficient particularity. *See Maio v. Aetna*,

---

[6] Cokebusters asserts that Quest represented that: (1) prior art consisted of only a stream of one-dimensional mathematical and two-dimensional strip charts less than one foot in length such that customers were unable to make quick decisions concerning furnace tube replacement; (2) because prior art permitted viewing only one piece of data at a time, overall trends of plant decay could not be made; and (3) while prior art used data partitioning and date markers to locate inspection data, it did not display representation of piping geometry. Cokebusters contends that these statements were false. (D.I. 89 at 4-5)

8

*Inc.*, 221 F.3d 472, 482 (3d Cir. 2000) ("The issue is not whether a [claimant] will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."). Taking Cokebusters' allegations as true, as is proper at the motion to dismiss stage of litigation, the court concludes that the misrepresentations regarding the prior art as alleged by Cokebusters were but-for material. Therefore, it need not decide whether Roberts' conduct constitutes egregious misconduct, which creates a presumption of materiality. *See Outside the Box Innovations*, 695 F.3d at 1294.

### C. Intent to Deceive

With respect to intent, "[b]ecause direct evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence. However, to meet the clear and convincing evidence standard, the specific intent to deceive must be 'the single most reasonable inference able to be drawn from the evidence.'" *Id.* (quoting *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed. Cir. 2008)).

Cokebusters alleges[7] that Roberts was a central figure for the development of the technology and, therefore, that he could not claim his misrepresentations were mistakes because he "knew enough to recognize that he was crossing the line from

---

[7] Cokebusters also alleges that Roberts attended several of the multi-day sales conferences at which Hydro Kleen Systems presentations showed the existing idea of mapping data to the furnace layout and a two-dimensional display of problem areas, and that Quest made note of that technology at the time of the conferences. (D.I. 89 at 13) Cokebusters relies, in part, on those allegations to support its claim that Roberts was aware of the technology and intentionally withheld it from the PTO. *Id.* Quest asserts that the Hydro Kleen reference, which is not in the possession of Quest, cannot support an inequitable conduct allegation because Cokebusters merely alleges that Roberts should have known of the technology because he was present at the conferences. (D.I. 101 at 2) The court agrees. The relationship between the information presented in the Hydro Kleen PowerPoint and Roberts is too tenuous to show ownership of the knowledge or attribute a specific intent to deceive.

9

legitimate advocacy to genuine misrepresentation of material facts." (D.I. 89 at 12); *Apotex Inc. v. UCB, Inc.*, 763 F.3d 1354 (Fed. Cir. 2014). Further, it alleges that Roberts frequently prepared and quoted offers for potential FTIS and LOTIS jobs which included extensive discussions of the technology and advanced software and imagery offerings of the systems. (D.I. 89 at 13) Cokebusters also states that, despite numerous opportunities to correct the record, Roberts made false statements repeatedly, each misrepresentation increasing the likelihood that the '874 patent would issue because they were designed to increase the perceived gap between the prior art and the '874 patent and to obscure the pre-bar date sales. (D.I. 89 at 14) In addition, Cokebusters alleges that Roberts authored the 2003 Utah publication that discussed prior art but that was not disclosed to the PTO, and that the statements made to the PTO were flatly inconsistent with statements in the 2003 Utah publication, of which he was certainly aware. (D.I. 89 at 14) Finally, Cokebusters asserts that Roberts had a strong incentive to misrepresent the facts to the PTO so that the patent would issue. It alleges that Roberts and Quest were aware of oncoming competition that they hoped to avoid with the issuance of the patent, and that Roberts stood to gain personally from the issuance of the '874 patent, as both the inventor and a shareholder in the company. *Id.*

Roberts' conduct, as alleged by Cokebusters, is evidence of a lack of candor with the PTO. As a result, the court finds that intent to deceive is the "single most reasonable inference able to be drawn from the evidence." *Therasense*, 649 F.3d at 1290 (quoting *Star Scientific*, 537 F.3d at 1366). The fact that Quest disagrees with the factual representations made by Cokebusters is irrelevant, as the court is not required to judge the merits of the parties' respective positions at this stage of the proceedings.

## V. CONCLUSION

For the foregoing reasons, Quest's renewed motion to dismiss and strike Cokebusters' counterclaim and affirmative defense of inequitable conduct is denied. As noted above, Quest's motion is granted with respect to Clean Harbors. An order shall issue.